PLUMMER *v.* CURRIER & A.

Independent admissions may be shown in evidence, though made in the course of negotiations for a reference or compromise of a dispute ;— thus: on the trial of a dispute as to whether certain premises were held by the plaintiff of the defendant under an agreement to pay rent, or otherwise, an offer by the defendant to refer the question of how much the plaintiff should pay as rent was properly received.

Whether unthreshed wheat and oats are provisions, within the meaning of the statute exempting property from attachment, is a question of fact for the jury (LADD, J., dissenting).

Where a good verdict can be concluded by the court from facts specially found by the jury, it will be done, and judgment entered accordingly.

TRESPASS, by Leroy Plummer against Nathan M. Currier and Orren M. Currier, for taking and carrying away twelve tons of hay, one hundred bushels of corn, one hundred and twenty bushels of potatoes, a quantity of wheat and straw, a quantity of oats and straw, seventy-five bushels of apples, some beans and pumpkins, three colts, and one cow. Plea, the general issue, with a brief statement justifying the taking of that portion of said property attached as hereinafter set forth by virtue of legal process, and alleging that the balance of the property aforesaid belonged to the defendants.

The plaintiff's evidence, before he rested his case, tended to show that, about the middle of April, 1870, he bargained with the defendants for a farm, situated in Canaan, agreeing to pay them therefor the sum of $1,600, of which he was to pay $300 when he took possession, and the balance in annual payments of $50 each, with the right to pay more and oftener if he chose to do so ; that he agreed to return to Vermont, where he had previously lived, and remove his goods and family therefrom to the farm as soon as he could ; that he came back to Canaan with his goods and family about the first of May, 1870, and, before moving upon the farm, made some examination of it, and ascertained that it was not as good as it had been represented to him by the defendants to be at the time the bargain was made; whereupon he went to one of the defendants and told him that the farm was not as represented, and he was dissatisfied with the bargain ; that this defendant then told him that he might move upon the farm, and if it did not answer his recommendation, he could carry it on at the halves; and if it did answer his recommendation, he could have it as agreed upon ; that the plaintiff thereupon moved upon the farm and remained there till about the 12th day of September, when he removed to Enfield ; that he cut the hay and raised the corn, potatoes, wheat, oats, apples, beans, and pumpkins, sued for in the action, upon the farm while he lived upon it, as aforesaid ; that the defendants sued him in haying time, and attached the colts and cow mentioned in his writ, and also the hay, wheat, and oats,—all of which were subsequently sold by the sheriff at auction ; that the suit upon which said property was attached and sold was entered in court at Haverhill, and he employed counsel to answer to it; that, at the time of said attachment and sale, besides the cow sold, he had a heifer that would have been two years old in the December succeeding the attachment, and had had a calf before the attachment, but she did not give much milk, and he did not know, but he was told at the time of the sheriff's auction sale, that he might take his choice between the one attached and this heifer, but it did not appear that he exercised his choice ; that, at the time of making either of the bargains with the defendants, nothing was said as to whether the hay should be fed out upon the farm or not. It did not appear from the evidence that, at the time of the commencement of this suit, the defendants had sold, destroyed, or consumed any of the products of the farm, save such as had been attached and sold by the sheriff as above stated. Upon this point it only appeared that the

defendants had removed the crops from the fields, but what they did with them did not appear. Having shown the foregoing facts, the plaintiff rested his case; whereupon the defendants moved for a nonsuit, which was overruled by the court, and they excepted.

The defendants then put in evidence an authenticated copy of the writ in favor of the defendants against the plaintiff, dated August 22, 1870, returnable to the September term of the supreme judicial court for the western judicial district of Grafton county, and of the returns of the officer thereon. From the officer's return, it appeared that on said August 22, 1870, he attached, by virtue of said writ, all the hay and grain in the town of Canaan in which Plummer had any right, title, interest, or estate; also, three colts and one two-year-old heifer; and that, upon petition of the defendants, the property thus attached was subsequently examined and sold upon the writ according to law. No question was made at the trial but that the hay, grain, and colts attached are the same for which the plaintiff seeks to recover in this action; but the attachment and sale, by virtue of said writ, constitute the trespass for which the plaintiff seeks to recover, so far as the articles attached are concerned. The defendants, having put in said copy, rested their case. The declaration in said writ was in assumpsit for the use and occupation of the premises in question. The said copies may be used in argument.

Thereupon the plaintiff was put upon the stand again by his counsel, and testified as follows: " Along in haying time I offered to pay Currier for the use of their farm $60; or what more than that any man would say it was worth. He said he would be damned if he would do it." Subject to the defendants' exception, he testified further as follows: " I spoke to Currier in August, and he said he would leave it out what I should pay for the use of the place, and the men were picked; but Currier did not appear at the time and place agreed upon for the reference." The plaintiff further testified as follows: " The first of May was the last I remember of the defendant's saying he would take a portion of the crop for the use of the farm. He said that if I did n't take the farm, I could pay him for rent of the farm or a portion of the crop. Nothing else was said at that time. In haying time he said he would do one way or the other—that he would n't wrong me. I said to him I was willing to pay him for the use of the farm whatever it was worth. He said if I did n't take the farm he would take everything away from me." On cross-examination he said,—" I supposed that I had my choice—to take the farm at the halves, or pay rent for it, as I saw fit, and he had the same right. After he tried to force the farm on to me, I thought I would pay him for the use of his farm. This was in haying time." The plaintiff offered no other evidence upon this point.

Nathan M. Currier, one of the defendants, with whom the plaintiff claimed that the foregoing conversation was had, denied having any such conversation with the plaintiff, and said that the only trade there was made with the plaintiff was the agreement by which he was to

purchase the farm as before stated; and that, when he moved upon the farm, in May, he said he had been disappointed in getting the $300 that he was to pay down, but should surely have it soon, and would pay it without fail by the first of June, if the defendants would allow him to take possession ; and that he then, or at any other time before this suit was brought, made no complaints that the farm was not as it had been represented to him ; that he allowed him to take possession upon this assurance of payment, and allowed him to remain so long as he did only because the plaintiff repeatedly promised to make the payment, which he never did ; that he always considered him in possession of the farm as a purchaser,—and not as a tenant, either at the halves, or to pay rent,—and never made any agreement of tenancy with him, or had any talk with him about a tenancy.  To the same effect was the testimony of his son, Orren M. Currier, who was present at the times of the conversations with the plaintiff.  Syreno D. Gorham also testified that the plaintiff's family stopped with him two or three days after he brought them to Canaan ; and that he worked with the plaintiff from time to time during the summer, and had known him while he lived in Vermont; and that the plaintiff never made any complaints to him that the farm was not what it had been represented to him, only in haying time he said he was not getting as much hay as he expected ; and that the plaintiff never claimed that he was in possession of the farm as a tenant at the halves, or as a tenant otherwise.  It appeared that the season of 1870 was a dry season, and that the hay crop was cut short in consequence.

The defendants asked the court to instruct the jury, among other things, that unthreshed wheat (and it was admitted that the wheat and oats in question were unthreshed) is not provisions, within the meaning of the statute exempting property from attachment ; that the defendants are not liable in this action for any act of the sheriff,—unless it is shown that such act was done by the procurement and direction of the defendants,—and are not liable for any abuse of authority by the sheriff in attaching exempted property ;—but the court refused to give such instructions, and, instead thereof, instructed them that it was for them to say whether unthreshed grain is provisions, within the meaning of the statute exempting property from attachment ; and that, if they found that the plaintiff was so destitute that he required this wheat, perhaps they would find it was provisions.  As to the hay, the court instructed the jury that if they found that the plaintiff was carrying on the farm as a tenant, he was bound to spend the hay upon the farm, unless it was expressly agreed between him and the defendants that he need not do so ; and that in that case the defendants would not be liable for attaching and selling the whole of the hay, and not leaving him a ton and a half as exempt from attachment.

The court, without objection from either side, asked the jury to return, with their verdict, answers to the following questions,—which they did, and their answers are given with the questions : 1. In what capacity did Plummer occupy the farm ?—as a tenant carrying on the farm at the

halves, or, as : tenant under an agreement to pay rent, or under an agreement to ] rchase, without any agreement about rent or shares? *Answer*. As a 'nant under an agreement to pay rent. 2. Was there an agreement t. the effect that the hay need not be expended on the farm? *Answer*. We are of the opinion that the hay was to be expended on the farm. 3. If the jury find a verdict for the plaintiff, they will name the damages awarded for each article separately. *Answer*. The jury, in the case Plummer against Currier, find the plaintiff a tenant under an agreement to pay rent for farm the sum of sixty dollars, and adjudge the defendants liable for the removal and use of the following described property, viz. : Twelve tons hay, of the value of $138; forty bushels potatoes, $20; twenty-five bushels corn, $25; wheat and straw, $10; oats and straw, $5; pumpkins, $2; amount, $200; deducting rent for farm, $60; balance, $140. And they returned a verdict for the plaintiff for $140,—which the defendants moved to set aside, because a nonsuit was not granted upon their motion as above stated; because of the admission of evidence to which they excepted as aforesaid; because the court did not give the instructions asked for by them; because of the instructions given by the court as to provisions exempted from attachment; and because the verdict is against the evidence in the case, and is contrary to law in many respects.

The plaintiff moved that the verdict be recorded as a verdict for damages to the amount of $200,—claiming that the jury had no right to set-off or deduct from their award of damages any sum as rent for the premises. The motion was denied.

The case was reserved.

*Marshall & Chase*, for the defendants.

I. The plaintiff was allowed to testify, subject to the defendants' exception, as follows: " I spoke to Currier in August, and he said he would leave it out *what I should pay for the use of the place*, and the men were picked; but Currier did not appear at the time and place agreed upon for the reference." This evidence was clearly incompetent, and renders the verdict invalid, for two reasons, viz. :

1. Because, as was decided, DOE, J., in *Gault, Brown & Co.* v. *George W. Brown and William H. Brown*,—Merrimack county, December law term, 1870 (not yet reported),—" It is not competent for one party to prove that the other party has offered to compromise, or to refer the dispute. Such evidence is excluded, because the law encourages the settlement of controversies without litigation in the courts; and to receive overtures of pacification in evidence, *as proof of an admission of being in the wrong*, would be to discourage every effort to avoid litigation." After the defendants' motion for a nonsuit was made, and the plaintiff ascertained, from the discussion and intimations of the court thereupon, that he would probably be unable to sustain his case upon the evidence that he had given when first upon the stand, he " took

a new departure," and attempted to show that he was to pay rent for the farm, if he so chose, instead of having it on shares, as he had previously testified. And one of the plaintiff's objects, in introducing the evidence excepted to, must have been to show that when Currier, in the course of this negotiation for a reference, said that he would leave out what the plaintiff "should pay for the use of the place," he admitted thereby that the understanding was that the plaintiff should pay some rent for the use of the farm, but there was a question as to the amount. Indeed, this was the ground that the plaintiff's counsel based its competency upon when he offered the evidence. This certainly is in conflict with the letter and the spirit of the rule above referred to : it is in direct conflict with the principle upon which the rule is founded.

2. The statement that "the men were picked, but Currier did not appear at the time and place agreed upon for the reference," shows that the plaintiff desired a reference, and was ready to abide by his agreement to have one ; but that the defendants, although having agreed to one, were unwilling to carry out such agreement. In other words, the plaintiff desired to refer, and avoid litigation, and the defendants did not, but desired litigation, and so the sympathy of the jury was enlisted in favor of the plaintiff against the defendants. In *Gault, Brown & Co.* v. *George W. Brown and William H. Brown,* the plaintiffs testified that they " proposed to the defendants to leave the matter in controversy to men," which proposition was declined by the defendants,—and the verdict of the jury, in favor of the plaintiffs, was set aside for this cause alone ; and the reason assigned for so doing was, that sympathy and prejudice were excited in the minds of the jury thereby, as stated above. Applying the same principle in this case, this verdict must be set aside.

II. By virtue of the writ in favor of the defendants, against the plaintiff, returnable to this court for Grafton county, some *unthreshed* wheat and oats were attached. It is submitted that the plaintiff cannot recover in this action for said wheat and oats, unless the same were *provisions*, and, as such, exempt from attachment by virtue of the Gen. Stats., ch. 205, sec. 2, x. Upon this point the court instructed the jury that it was for them to say whether unthreshed grain is provisions, within the meaning of said statute, and that, if they found that the plaintiff was so destitute that he required this wheat, perhaps they would find it was provisions. We believe these instructions are erroneous, and for the following reasons :

1. Because, by them the jury were required to interpret or construe the law,—a duty that belongs to the court, and not to the jury. *Ad quæstionem facti non respondent judices, ad quæstionem legis non respondent juratores.* Broom's Legal Maxims. 103 ; *Pierce* v. *The State,* 13 N. H. 536. It is the province of the court to construe all written instruments—statutes, as well as contracts and other writings. *Prescott* v. *Hayes,* 43 N. H. 596 ; authorities cited in Morrison's Digest 587. This is a principle too familiar to require the citation of further authority. We therefore respectfully submit that the court should have told the

jury what is the meaning of the word "provisions," as used in the statute, and whether it includes unthreshed wheat and oats.

2. Because the jury were instructed, in substance, that the word "provisions," as used in the statute, has different meanings, according to the pecuniary condition of the individuals in whose behalf exemption is to be made. "If they found that the plaintiff was so destitute that he required this wheat, perhaps they would find it was provisions." The inference is, that if he was not so destitute, this wheat would not be provisions. Undoubtedly a man who has a number of different articles, all of which are "provisions," may have some one or more of them exempted to him, leaving the others subject to attachment, but each of these articles is "provisions," notwithstanding some may be attached and some are exempt. The *character* of the articles determines whether they are provisions, and not the *quantity*. No article is "provisions" for the destitute, which is not, also, for the man having more means. The jury were clearly misled and prejudiced by the instructions given.

III. The word "provisions" does not include *unthreshed* wheat and *oats;* and for this, and the other reasons above offered, the instructions asked for by the defendants should have been given. The words of a statute should be interpreted according to their familiar use and acceptation, unless they be scientific or technical terms, or unless, when so interpreted, they are repugnant to acknowledged principles of State policy, or to the clear design of the enactment. Potter's Dwarris on Statutes, ch. 5, pp. 143, 179, note; *Robinson* v. *Tuttle*, 37 N. H. 249; *Barnstead* v. *Alton*, 32 N. H. 250. This word is not a scientific or technical term; neither is the interpretation thereof that we contend for repugnant to State policy or the design of the enactment. Worcester defines it as "food, victuals, fare, provender." In the synonyms given under the word "food," he says, "provisions is a term that is applied to whatever is used for food." Webster defines it as "all manner of eatables for man and beast." As used in the statute, it is evident that it refers to eatables for *man only.* Beasts are provided for in another portion of the statute, where a ton and a half of hay is exempted from attachment. The word, in common use, is applied to food or eatables for man, and not to that for beasts. Straw is not food for man, and unthreshed grain includes the straw, which has a value. It will be seen that the jury, in this case, regarded the straw as distinct from the wheat and oats, for they found, in their special verdict, the values of the "wheat *and straw*," the "oats *and straw*." It cannot be said that wheat is provisions for man until it is separated from the straw, or that oats are, even after they are separated.

IV. As the verdict of the jury includes the value of the straw and oats, it should be set aside, because they are not exempt from attachment, as shown above. There is no way of ascertaining, by computation, the value of the wheat straw, as found by the jury, and therefore a remittitur cannot remedy this defect.

V.—1. The jury made up their verdict, in part, with "twelve tons

of hay of the value of $138." All this hay was attached upon the defendants' writ against the plaintiff. It is admitted that the process upon which it was attached was valid; that the court to which such process was returnable had jurisdiction of the parties and the subject-matter of the suit, and that the proceedings of the officer were regular. Trespass cannot be maintained against the officer or the plaintiff for the property attached under these circumstances, unless the same is exempt from attachment. 1 Chit. on Pl. 181, 186; *Blanchard* v. *Goss*, 2 N. H. 491; *Kimball and wife* v. *Molony*, 3 N. H. 376; *Keniston* v. *Little*, 30 N. H. 318, 324. The court so directed the jury in this case, without objection by the plaintiff; but the jury either did not understand the instructions, or concluded to disregard them. It is evident, therefore, that the verdict is erroneous so far as all but a ton and a half of this hay is concerned, and we claim that it is so as to this ton and a half also.

2. The jury were of opinion that the hay was to be expended upon the defendants' farm. The plaintiff did not contend that he had authority to sell it or expend it elsewhere. In such a case, the law requires it to be expended on the farm, and the finding of the jury in this *one* particular was in accordance with law. Taylor's Landlord and Tenant, sec. 534; 4 Kent's Com. 71, 72; 1 Washb. on Real Prop. 102, sec. 4; *Moulton* v. *Robinson—Ladd* v. *Robinson*, 27 N. H. 550–561; *Perry* v. *Carr*, 44 N. H. 120. The general property in the hay remained in the defendants, although during the continuance of the plaintiff's alleged tenancy the possession was common. *Moulton* v. *Robinson*, above cited, 563. The plaintiff would have no right to enter and remove the same after the termination of his alleged tenancy. His whole interest in the hay ceased with his tenancy. See above authorities.

It appears from the case and papers that the plaintiff removed from the defendants' farm about September 12, 1870, and that the hay in question was not sold by the sheriff until October 26, 1870,—a long time after the termination of the tenancy. So, at the time of the sale, the plaintiff had no right, title, or interest whatever in a ton and a half, or any other part of the hay.

Although the hay was attached on August 22, 1870, the plaintiff's possession or interest therein was not disturbed thereby. It was not moved by the sheriff or the defendants. It was a season of the year when the plaintiff would not feed it out. If the attachment was any injury to the very limited rights which the plaintiff had in this hay during the three weeks that he remained upon the farm after the attachment was made, it was an injury only in name, for which he would be entitled to nothing more than nominal damages. But it does not seem to us that it was an injury to that extent even.

3. The jury valued the hay at $11.50 per ton, as will be seen from their special verdict. It is evident, from this fact, that they misconceived the rights of the plaintiff in this hay. He had no such rights therein as would be of this value, to himself or any one else.

VI. The special finding of the jury, that the plaintiff was a tenant of the defendant, "under an agreement to pay rent for the farm the sum of $60," is against the evidence in the case. The plaintiff, after he made his new departure, testified that he offered to pay the defendant $60 for the use of the farm, and Currier replied "he would be damned if he would do it." This is the only evidence in the case in relation to a tenancy at $60 rent, and most men would not be satisfied by this evidence that the minds of these parties came together in this conversation so as to make an agreement. The other conversations testified to by the plaintiff (a portion of which we have shown above to be incompetent), if credited, tended merely to show that the plaintiff, being in possession of the farm, had differences with the defendants as to the terms upon which he was carrying it on, which differences were never settled by any definite agreement. According to the agreement which the jury found to exist,—for how long a term was the tenancy to continue? and for what length of time was the $60 to pay the rent? and where did they find their evidence upon which to base such an agreement?

VII. The jury deducted the $60 rent from the amount of the items which they found to be due the plaintiff, and he claims that this was wrong, and moves that the verdict be recorded for $200. We admit that the jurors were the authors of the law by virtue of which they made this deduction, and we respectfully submit that the granting of the plaintiff's motion would be making another chapter of the same kind of law. Is it not probable that this was a compromise verdict,— some of the jury claiming that the verdict should not be for a larger sum than $140 in all, and others claiming that it should be for $200, and finally yielding to this deduction for the sake of an agreement? Will the court undertake to trim and fill up this verdict so as to conform to law? If so, we suggest that they bring the parties and witnesses before them, and hear their evidence before doing so. By this course, they will be likely to avoid making a bad matter worse.

*Flint*, for the plaintiff.

*Marshall & Chase*, in reply, cited and commented on *Moulton* v. *Ladd*, 27 N. H. 562, 563; Taylor's L. & T., sec. 534, *et seq.*; *Cooper* v. *Newman*, 45 N. H. 339; Sedgw. on Dam. 573, 645; *Felton* v. *Fuller*, 35 N. H. 226, 229; *Carpenter* v. *Cummings*, 40 N. H. 172; *Bassett* v. *Salisbury Manuf. Co.*, 28 N. H. 454, 455; *Lowell* v. *Parker*, 10 Met. 316; *Hoit* v. *Molony*, 2 N. H. 323; *Odlin* v. *Gove*, 41 N. H. 465; *Sanborn* v. *Emerson*, 12 N. H. 58; *Pierce* v. *Wood*, 23 N. H. 519; *Willard* v. *Stevens*, 24 N. H. 271; *Luey* v. *Bundy*, 9 N. H. 298; *Lisbon* v. *Lyman*, 49 N. H. 582.

LADD, J. According to the testimony of the plaintiff, he went into occupation of the farm without any definite arrangement or contract as

to the terms upon which it was to be held. If so, while he thus occupied the premises, he was a tenant at will of the defendants. Gen. Stats., ch. 231, sec. 5. According to the testimony of the defendants, he was let in on a negotiation for a sale, and no other contract was ever made. This comes to the same thing. He would still be a tenant at will—*Doe* v. *Chamberlaine*, 5 M. & W. 14 ; *Doe* v. *Miller*, 5 C. & P. 595 ; *Howard* v. *Shaw*, 8 M. & W. 118 ; *Gould* v. *Thompson*, 4 Met. 224 ; 1 Washb. R. P. (3d ed.) 511, note 2 ; *Woodbury* v. *Woodbury*, 47 N. H. 11, and cases cited—and in this State would be liable for the use and occupation, either in trespass or assumpsit. *Woodbury* v. *Woodbury, supra.* The crops raised upon the land during the continuance of such tenancy would be the property of the tenant. *Rising* v. *Stannard*, 17 Mass. 287 ; *Ellis* v. *Paige*, 1 Pick. 49 ; 3 Washb. R. P. 509. Littleton, speaking of tenancies at will, says (ch. 8, sec. 68),—" If the lessee soweth the land, and the lessor, after it is sown and before the corne is ripe, put him out, yet the lessee shall have the corne, and shall have free entree, egresse, and regresse to cut and carrie away the corne, because he knew not at what time the lessor would enter upon him." And see Co. Litt. 55, a ; 2 Bl. Com. 146. In this case, it seems that an action of assumpsit had been brought by the defendants in Grafton county, against the plaintiff, for the use and occupation of the premises, which could rest upon no other ground than that the plaintiff had had a beneficial enjoyment of them.

In this view, I am unable to see the importance of the special finding of the jury, that the plaintiff held under an agreement to pay rent ; and it was only on this question that the evidence objected to was admitted. We should not set aside a verdict because incompetent evidence was received upon an immaterial issue, unless it appeared that the party objecting was prejudiced thereby : but we think the evidence was not incompetent. The rule is strictly held in this State that an offer to compromise is not to be shown, on account of the tendency such a practice would have to discourage the settlement of disputes. But it is at the same time held with equal clearness, that any independent admission, though made in the course of negotiations for a compromise, may be shown. *Sanborn* v. *Neilson*, 4 N. H. 501 ; *Bartlett* v. *Hoyt*, 33 N. H. 151 ; *Perkins* v. *Concord R. R.*, 44 N. H. 223 ; *Eastman* v. *Amoskeag Co.*, 44 N. H. 143 ;—and see *Mussey* v. *Holt*, 24 N. H. 248.

If the offer here had been to refer the question whether the plaintiff held under an agreement to pay rent, it would clearly have been inadmissible. But the offer, as testified to by the plaintiff, was to refer the amount he should pay. Suppose the defendants had said in words, " You are holding under an agreement to pay me rent ; we differ as to the amount you shall pay ; I will leave that out to men :" could it be contended that here was not an independent admission, which might be shown against him on a subsequent trial of the question whether the holding was under such agreement or not, although it was coupled with an offer to refer the other matter ? We think not. The admission, as to the mode of holding implied by an offer to refer the question

of the amount to be paid, is little less explicit and conclusive, though no such language was used.   The offer presupposes and is based upon a fact as to the mode of holding, which the defendant denied and the plaintiff affirmed at the trial.   We think it comes fairly within the cases above cited, and is not obnoxious to the objections which existed in *Gault* v. *Brown*, referred to in the defendants' brief,—and that the verdict could not for this reason be set aside, even were the question upon which the evidence was admitted material.

A majority of the court are of opinion that the question whether unthreshed wheat and oats were to be regarded as provisions, under the circumstances shown, was properly left to the jury.   My first impression was different, and I still find myself unable to concur in this view.   There is nothing technical, scientific, or unusual in the term provisions, as used in the statute, calling for interpretation by the jury ; and if the fact that both wheat and oats are used as food for man were in dispute, still, that question was not submitted to the jury.   It seems to me the question whether or not any given thing is provisions, within the meaning of the statute, must depend on the nature of the thing itself, and the uses to which it is or may be put.   If wheat and oats unthreshed are provisions, nothing else being left, the officer must leave of them the amount exempt from attachment as provisions.   If they are not provisions, it makes no difference whether anything else were left or not : he might take the whole.   But I think the jury were right in their interpretation.   The fact that the grain had not been separated from the straw by threshing, to my mind makes no difference.   If the grain could be taken on a writ before it was threshed, why not after it was threshed and before it was carried to the mill to be ground ? and if before the grinding, then why not after the grinding and before the cooking ?—for all these processes are equally necessary before it is fully prepared for food.   The result, therefore, so far as this case is concerned, is the same, whether one view or the other be correct : the only difference is, that I should say the ruling was too favorable to the defendants, inasmuch as it sent a question to the jury which ought to have been determined against them by the court.

A difficulty is suggested as to the straw.   The jury appraised the wheat and straw together at $10, and the oats and straw together at $5; and it is said that the straw was not exempt from attachment, and, there being no separate valuation, the court cannot say how much of the verdict shall stand for the wheat and oats apart from the straw.   Before threshing, it was impossible for the officer to take the straw without at the same time taking the grain, which he had no right to take.   The plaintiff was under no obligation to thresh it, and the officer did not do so.   The whole was taken together and sold on the writ in entire disregard of the plaintiff's rights; and the contention now is, that the officer accomplished what there is no pretence he intended, and what, from the situation of the property, was a physical impossibility, namely, that he effected a valid attachment of the straw, although his first act in seizing it was a trespass by reason of the plaintiff's right in the grain.

We cannot accept this view : we think the taking of the unthreshed wheat and oats must be regarded as an abuse of an authority in law, somewhat analogous to the seizure of an article from the person of the defendant, which cannot be taken without first committing a trespass. See *Kingsbury* v. *Pond*, 3 N. H. 511.

As to the hay, the jury seem to have misunderstood or entirely forgotten the instructions of the court;—at any rate, they totally disregarded them. There was no exception to the instruction on this point, and we have not considered whether it was right or not. It is admitted that the verdict was wrong as to all but a ton and a half of hay, which the statute exempts from attachment ; and if the instruction was right, the verdict was wrong as to that also. All the hay has been sold on the defendants' writ in Grafton county, and must be accounted for in that suit, and we think that item must be wholly stricken out.

The jury have found specially the separate value of each item, for which, in our opinion, the plaintiff is entitled to recover ; and we think he is entitled to judgment on the verdict for the amount of those items. It is of no consequence, so far as we can see, that they undertook to deduct $60 for the use of the premises, which they had no right or power to do. That operation was entirely distinct from their appraisal of the articles for which the plaintiff is entitled to recover, and it is impossible to see how the appraisal could have been affected by it. The error lies upon the very surface of their special findings. It is true, they passed upon one matter not involved in the case ; but all the facts necessary to a perfect verdict were specially found, and the court can plainly see for what sum judgment should be rendered. *Tucker* v. *Cochran*, 47 N. H. 54 ; *Janvrin* v. *Fogg*, 49 N. H. 340 ; *Lisbon* v. *Lyman*, 49 N. H. 553.

*Judgment on the verdict for $62.*